# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARIO LOJA, on behalf of himself and all
others similarly situated,

                Plaintiff,

    v.

MENDEL'S MUFFINS AND STUFF, INC.,
and BEST BITES DISTRIBUTIONS, INC.,
and GERSHON NEUSTADT, an Individual,

                Defendants.

Civil Action No.
2:18-cv-09248 (MAH)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
AND RELATED RELIEF**

---

LAW OFFICES OF MITCHELL SCHLEY, LLC

Mitchell Schley, Esq.
197 Route 18, Suite 3000
East Brunswick, NJ 08816
Tel.: (732) 325–0318

PECHMAN LAW GROUP PLLC

Louis Pechman, Esq.
Vivianna Morales, Esq.
488 Madison Avenue - 17th Floor
New York, New York 10022
Tel.: (212) 583–9500

*Attorneys for Plaintiff Mario Loja, the Rule 23 Class,
and the FLSA Collective*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................. 1

**STATEMENT OF FACTS AND PROCEDURAL HISTORY** ................................. 1

    I.     Factual and Procedural History and Settlement Discussions ...................................... 1

    II.    Settlement Terms and Events Since Preliminary Approval .......................................... 2

    III.   Tasks Remaining to Complete Settlement Following Court Approval ....................... 6

**ARGUMENT** ................................................................................................................. 6

    I.     Final Approval of the Settlement Is Appropriate ....................................................... 6

    II.    The Proposed Settlement is Fair, Adequate, and Reasonable ..................................... 8

    A.  The Court Should Presume that the Settlement is Fair ............................................... 8

    B.  The *Girsh* Factors Weigh in Favor of Approval ..................................................... 11

    1.   Complexity, Expense, and Duration of Litigation .................................................... 11

    2.   Reaction of the Class to the Settlement ..................................................................... 12

    3.   Stage of Proceedings and Amount of Discovery Completed ................................... 12

    4.   Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial ........................................................................................................... 13

    5.   Reasonableness of Recovery in Settlement .............................................................. 13

    C.  The Proposed Settlement Is Fair and Reasonable under the FLSA ......................... 15

    III.   The Court Should Approve Class Counsel's Requested Attorneys' Fees ................. 16

    IV.   The Court Should Approve Class Counsel's Requested Costs .................................. 21

    V.   The Court Should Approve the Class Representative's Requested Service Award ... 21

**CONCLUSION** ............................................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) ..................................................... 21

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437 (E.D. Pa. 1995) ................................................ 10

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993) ................................................ 12

*Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *1 (E.D. Pa. May 9, 2003) ............................................................................................................................ 12

*Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16–cv–6054, 2017 WL 2986300, at *1 (E.D. Pa. July 13, 2017) .......................................................................................... 22

*Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012 ............................................................................... 19

*Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1 (D.N.J. 1979) ............................................ 10

*Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 200 (2d Cir. 2015) ............................... 7

*Cruz v. JMC Holdings, Ltd.*, No. 16–9321, 2019 WL 4745284, at *9 (D.N.J. Sept. 30, 2019) ... 20

*Davis v. Essex Cnty.*, No. 14-cv-l122 (CCC-JBC), No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) .............................................................................. 7

*Dominguez v. Galaxy Recycling Inc.*, No. 12–7521 (LDW), 2017 WL 2495406, at *2 (D.N.J. June 9, 2017) ...................................................................................................................... 8, 10

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) ........................................... 7

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ................................................................. 8, 11

*Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ................................................ 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) .................................................. 8

*Hegab v. Family Dollar Stores, Inc.*, No. 11–1206(CCC), 2015 WL 1021130, at *6 (D.N.J. Mar. 9, 2015) ............................................................................................................................ 12

*In re AT&T Corp. Securities Litigation*, 455 F.3d 160, 164 (3d Cir. 2006) ............................... 20

*In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001) ................................. 8, 12, 20

*In re Cedant Corp. PRIDES Litig.*, 242 F.3d at 736 ................................................................. 20

*In re Cedent Corp.*, 264 F.3d ........................................................................................................ 12

*In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995) ............................................. 7, 12, 19

*In re GM Trucks*, 55 F.3d ............................................................................................................. 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) ..................................................................................................................... 8

*In re Safety Components, Inc. Secs. Litig.*, 166 F. Supp. 2d 72, 101–02 (D.N.J. 2001) ......... 20, 21

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ..................................... 7

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) ................................................. 10

*Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999) ......................................................................................................... 7

*Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *1 (D.N.J. 2006). 14

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) .................. 7, 15

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012) ... 15

*MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896 (3d Cir. 1997 ................................................. 16

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ........................................................... 11

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) ......................................................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ................................ 7

*Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015) ......................................................................................... 8

**RULES/STATUTES**
Fed. R. Civ. P. 23 ........................................................................................................................ 6

## PRELIMINARY STATEMENT

By this unopposed Motion, Plaintiff and Class Representative Mario Loja ("Plaintiff" or "Loja")[1] respectfully requests, on behalf of himself and all Class Members, that the Court grant final approval of the Parties' Settlement, as embodied in the Stipulation. *See* Schley Decl. Ex. 1. The Court preliminarily approved the Settlement by Order dated May 14, 2020. ECF No. 80. Since then, no Class Member has objected to or requested exclusion from the Settlement, even though 60 of the 62 Class Members received the Settlement Notice. *See* Schley Decl. ¶¶ 40, 41. For the reasons set forth in detail below, as well as those explained in the accompanying Schley Declaration, the Court should approve the Settlement as a fair, reasonable, and adequate resolution of a bona fide dispute that was reached following extensive arm's-length negotiations between experienced counsel.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff respectfully refers the Court to his Unopposed Motion for Preliminary Approval and supporting documents, ECF Nos. 68-71, for a complete recitation of the factual and procedural history of this litigation. For the Court's convenience, a summary of the facts, settlement structure, and procedure history relevant to this Final Approval Motion is set forth below.

## I.  Factual and Procedural History and Settlement Discussions

As set forth in the Complaint (ECF No. 1), Plaintiff brought his claims as purported class and collective actions on behalf of himself and all employees who work or worked as bakery workers for Defendants Mendel's Muffins and Stuff, Inc. ("Mendel's Muffins"), Best Bites

---

[1] Unless otherwise defined, all capitalized terms and abbreviations used in this memorandum of law are defined in the Parties' Joint Stipulation of Settlement and Release (the "Stipulation"), attached to the Declaration of Mitchell Schley ("Schley Decl.") as Exhibit 1. Exhibits to the Schley Declaration are referenced here by the prefix Ex. And the number designated to them in the Declaration. Exhibits to the Stipulation are referenced here by the prefix "Ex." and the letter designated to them in the Stipulation.

Distributions, Inc. ("Best Bites"), and Gershon Neustadt ("Neustadt") (collectively, "Defendants") in Paterson, New Jersey (collectively, "Class Members") within the three years prior to the filing of the Complaint, for claims brought under the FLSA, and within the six years prior to the filing of the Complaint, for claims brought under the New Jersey State Wage and Hour Law ("NJWHL"), and the New Jersey Wage Payment Law ("NJWPL"). Schley Decl. ¶ 5. Plaintiff sought to recover unpaid minimum and overtime wages pursuant to the FLSA, the NJWHL, and the NJWPL on his own behalf and on behalf of all other similarly situated employees. *Id.* at ¶ 5.

Following document discovery, discovery disputes, the partial deposition of Neustadt, Defendants' production of an accurate list of employees with hire and termination dates, the preparation by Plaintiff's counsel of a comprehensive damages analysis for use in the Parties' settlement negotiations, and protracted arms-length settlement negotiations between counsel, the Parties reached a Settlement, as set forth in the Stipulation, Ex. 1. *See* Schley Decl. ¶¶ 5-20. Although Defendants deny and dispute liability and damages, or that the case may be adjudicated on a class or collective basis outside of settlement, they have agreed to pay $170,000.00 to settle all claims asserted on a class and collective action basis.

## II.    Settlement Terms and Events Since Preliminary Approval

The Stipulation provides for full resolution of all wage-and-hour claims under the FLSA and the New Jersey state laws. *See generally* Ex. 1; Schley Decl. 21. Defendants will establish a Settlement Fund in the amount of $170,000.00, inclusive of attorneys' fees and costs, in exchange for ending the litigation and receiving releases from Class Members and the Class Representative. *Id* at ¶¶ 21, 22. The Settlement Fund is administered by a third-party and independent Claims Administrator, A.B. Data, Ltd. ("AB Data"). *Id.* at ¶ 21. A.B. Data's expenses are to be borne by Defendants. *Id.*

The Stipulation identifies a two-year liability period, September 1, 2017 to September 1, 2019, at which point Defendants assert they began paying legally-required overtime wages. Ex. 1 at §§ IV(A) and (B). Of the total Settlement Fund, Class Counsel will request through the instant motion that $56,122.00 be allocated as attorneys' fees, $1,616.00 be allocated as costs, and $5,000.00 be allocated as a Service Award to the Class Representative. *Id.* at § III(B)(1) and (2). The remainder of the Settlement Fund—$107,262.00 (the "Net Settlement Amount")—shall be distributed among the Class Members as provided for in the Payment Schedule, Ex. 3, as payment for alleged damages. *Id.* at § III(B)(3).

Individual Settlement Shares are calculated by diving the Net Settlement Amount by the total number of weeks cumulatively worked by the 62 class members during the two-year liability (2,871), resulting in a weekly value of $37.36. Schley Decl. at ¶ 33. The Class Members were allegedly paid straight-time for hours worked in excess of 40 per workweek, and are therefore owed half of their regular hourly wage rate for overtime hours worked during the liability period. $37.36 is equivalent to overtime pay for approximately eight hours per week during the Liability Period. The amount each individual Class Member receives (the "Individual Settlement Share") is calculated by multiplying $37.36 by the number of weeks he or she was employed by Defendants during the Liability Period, and is reflected in the Payment Schedule attached as Exhibit 3 to the Schley Declaration. In exchange for receipt of their Settlement Checks, Plaintiff and Qualified Class Members (*i.e.*, those who did not opt-out) release all New Jersey state law wage-and-hour claims against Releasees. *Id.* at ¶ 43. In exchange for cashing their Settlement Check, Plaintiff and Claimants also release their FLSA wage-and-hour claims against Releasees. *Id.* at ¶ 44. Any amounts in unclaimed or uncashed checks will be donated to charity as provided in the Stipulation. *Id.* at ¶ 45.

As noted above, the Court issued a Preliminary Approval Order on May 14, 2020. ECF No. 80. The Preliminary Approval Order conditionally certified, for settlement purposes only, the proposed class and collective action and the Rule 23 Class described in the Stipulation, Schley Decl. at ¶ 26, appointed the Law Offices of Mitchell Schley, LLC and Pechman Law Group PLLC as Class Counsel for settlement purposes, *id.* at ¶ 25, appointed A.B. Data Ltd. ("A.B. Data") as Claims Administrator to perform duties in accordance with the Stipulation, *id.*, appointed Plaintiff Mario Loja as Class Representative for settlement purposes only, *id.*, approved the proposed Settlement Notice as to form and content, *id.* at ¶ 27, and ordered A.B. Data to mail the Settlement Notices to applicable Class Members by June 8, 2020. *Id.*[2]

Counsel for Defendants, Avrom R. Vann, provided A.B. Data with the Stipulation, the Preliminary Approval Order, the Settlement Notice, and the Payment Schedule on June 3, 2020. *Id.* at ¶ 29. A.B. Data engaged professional translation services to translate the Settlement Notice into Spanish and reviewed Class Members' mailing addresses using the National Change of Address Database prior to mailing. *Id.* at ¶ 30-31. A.B. Data also updated the applicable dates and deadlines on the Settlement Notice as per the Preliminary Approval Order, included the applicable estimated Individual Settlement Shares as per the Payment Schedule, and included a mailing address for the receipt of any potential objections, requests for exclusions, and other communications with Class Members. *Id.* at 32.

As reflected in the Payment Schedule, Ex. 3, the estimated Individual Settlement Shares included in the Settlement Notices were calculated by dividing the Net Settlement Fund by the total number of workweeks worked by Class Members during the Liability Period, and then

---

[2] Following a delay in the provision of necessary materials to A.B. Data, the Court granted Defendants' motion for an extension of time until June 15, 2020 for the mailing of the Settlement Notices. ECF No. 84.

multiplying the quotient by the number of weeks worked by the individual Class Member during the Liability Period. *Id.* at 33.[3]  The estimated Individual Settlement Shares provide the Class Members with relief equal to $37.36 per week worked during the Liability Period as compensation for unpaid overtime premiums for overtime hours worked during the Liability Period. The highest estimated Individual Settlement Share is $3,885.49, and the lowest is $37.36. *Id.* at ¶ 34.

A.B. Data mailed the Settlement Notices to the 62 Class Members on June 15, 2020 in English and Spanish. *Id.* at ¶ 35.  The Settlement Notice explains the nature of the litigation and how each Class Member's estimated Individual Settlement Share was calculated. *Id.* at ¶ 36.  The Settlement Notice also informs the Class Members that (1) they have the right to opt-out of the Settlement, with the consequence of retaining their rights but not receiving any payment, (2) they can object to the Settlement, and (3) they must submit their requests for exclusion or their objections by August 21, 2020. *Id.* at 37.  The Settlement Notice further informs the Class Members of the rights being released under the Settlement, that a Fairness Hearing will take place on September 30, 2020, and who their attorneys are. *Id.*  Finally, the Settlement Notice informs Class Members that they can call Class Counsel, at the numbers provided, if they have any additional questions. *Id.*

Class Counsel has received calls from Class Members including Josue Lopez, Hilda Ramirez, Cristian Leon, and Alberto Saucedo reporting address changes and/or expressing approval of the Settlement, and has provided A.B. Data with updated address information for re-mailing of the Settlement Notices. *Id.* at ¶ 38.  A.B. Data updated Class Counsel and Defendants' counsel on July 20, 2020 regarding the number of objections and exclusions received.  As of July

---

[3] The Net Settlement Fund is $107,262.00, equal to the total Settlement Fund ($170,000.00) minus Class Counsel's requested attorneys' fees ($56,122.00) and costs ($1,616.00) and the Class Representative's requested Service Award ($5,000.00). *Id.* at 33.

20, 2020, the Settlement Notice has been successfully delivered to 60 of the 62 Class Members, and A.B. Data has received zero requests for exclusion from the Settlement and zero objections to the Settlement. *Id.* at ¶¶ 40, 41.

## III. Tasks Remaining to Complete Settlement Following Court Approval

If the Court grants the instant motion, as Class Counsel believes it should, A.B. Data will continue to perform the duties established in the Stipulation, including: (1) collecting any exclusions from or objections to the Settlement and monitoring the status of mailings and returns, (2) distributing settlement checks to Class Members, the Class Representative, and Class Counsel, and (3) distributing any unclaimed amounts of the Settlement Fund to a charity organization. *Id.* at ¶ 42.

The Class Representative and all Class Members who do not opt-out of the Settlement will receive a Settlement Check. Class Members who deposit their Settlement Checks within 60 days of their mailing become "Claimants" and, in exchange for receipt of their Settlement Share (*i.e.*, their payment under the Settlement), release all wage and hour claims against Releasees under New Jersey state law and the FLSA. *Id.* at ¶ 43. Participating Class Members who do not deposit their Settlement Checks within 60 calendar days of their mailing do not become Claimants and, as such, retain their rights against under the FLSA, but still release their rights against Releasees under New Jersey wage and hour laws. *Id.* at ¶ 44. Any amounts not claimed by Class Members will be donated to charity as provided in the Stipulation. *Id.* at ¶ 45.

## ARGUMENT

## I. Final Approval of the Settlement Is Appropriate

Rule 23(e) requires class action settlements to be approved by a district court. Fed. R. Civ. P. 23(e). Likewise, the FLSA generally requires settlements to be approved by the district court

or the Department of Labor. *See, e.g.*, *Davis v. Essex Cnty.*, No. 14-cv-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

The Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and, if so, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In reviewing a proposed class action settlement, courts consider whether it is "fair, adequate, and reasonable." *Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999); *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995). In conducting this review, courts are mindful that settlement is the preferred method for resolving class action lawsuits. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Federal courts, including those in the Third Circuit, strongly favor settlement of collective and class action lawsuits. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) (recognizing "strong presumption in favor of voluntary settlement" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). Reaching a reasonable settlement prior to dispositive motions or trial enables parties in class actions to avoid significant expense and delay and to ensure recovery for the class. *Ehrheart*, 609 F.3d at 594–95

("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

Approval of a proposed class action settlement is subject to the discretion of the district court. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard 'is left to the sound discretion of the district court.'" (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998))); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ("The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."). Nevertheless, in exercising its discretion, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the Court has already certified the Rule 23 New Jersey Class and FLSA Collective Action for settlement purposes only. *See* ECF No. 80. The Court is now asked to take the second step in the class action settlement analysis at the final fairness hearing. *See Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015). For the reasons set forth below, the Court should adopt the proposed Final Approval Order (enclosed to the Notice of this Motion) in its entirety, thereby finding that the Stipulation is a fair, reasonable, and adequate resolution of disputed claims; granting Class Counsel its attorneys' fees and costs requested; and granting the Class Representative's requested Service Award.

## II.     The Proposed Settlement is Fair, Adequate, and Reasonable

### A.     The Court Should Presume that the Settlement is Fair

A class action settlement is presumptively fair if: "(1) the negotiations occurred at [arm's] length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Dominguez v. Galaxy*

*Recycling Inc.*, No. 12–7521 (LDW), 2017 WL 2495406, at *2 (D.N.J. June 9, 2017) (quoting *In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)); *see also In re Warfarin*, 391 F.3d at 535; *In re Gen. Motors*, 55 F.3d at 785; *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007). Here, these factors compel a presumption of fairness.

First, the proposed Settlement was a product of arm's length negotiations. As explained in further detail below, Class Counsel calculated what they contend is Defendants' potential exposure after analyzing documents produced in discovery. Schley Decl. ¶ 17. The Parties disputed, and continue to dispute, the assumptions underlying the damages calculations. *Id.* After negotiations on September 12, 2019, followed by continued negotiations in the months that followed, the Parties have reached a settlement in principle. *Id.* ¶¶ 16-20.

Second, the Parties completed necessary document discovery prior and engaged in extensive litigation prior to reaching the settlement in principle. For example, following Plaintiff's service of interrogatories and document requests on July 13, 2018, Defendants obtained an extension of time to respond to the discovery requests and the Parties subsequently filed a joint Stipulation and Protective Order of Confidentiality on December 21, 2018, which was adopted by the Court. *Id.* at ¶ 12. The Parties litigated Defendants' letter motion requesting a determination whether employees who had allegedly signed arbitration stipulations after the Complaint was filed should be excluded from the putative class and collective action. *Id.* at ¶ 13. The Parties continued to litigate discovery disputes requiring various correspondences with the Court throughout 2019. For example, the Parties litigated the issue of Defendants' failure to preserve timecards on an ongoing basis throughout 2019, culminating in Plaintiff's letter motion on August 19, 2019 requesting that the Court enter a preservation order with respect to timecards of employees

described in the putative class and collective action. The Court entered a document preservation order on September 18, 2019. *Id.* at ¶ 14. Defendants' subsequently produced an accurate list of employees with hire and termination dates, which Class Counsel utilized to prepare a comprehensive damage analysis for settlement negotiation purposes. *Id.* at ¶ 17.

Third, the Parties' attorneys are competent and experienced in wage-and-hour collective and class actions. Class Counsel, Law Offices of Mitchell Schley, LLC, is a labor and employment law firm experienced in wage-and-hour practice. *Id.* ¶¶ 50-51. Pechman Law Group PLLC, is a New York City labor and employment law firm that has litigated hundreds of wage-and-hour cases on behalf of both employees and management. *Id.* ¶¶ 52-56. Defendants are represented by Avrom R. Vann PC, who is experienced in labor and employment litigation. The Parties' attorneys have the experience necessary to conduct a fair and adequate assessment of the strengths and weaknesses of their clients' respective claims and defenses in the litigation and, based on that assessment, to recommend a reasonable settlement. Accordingly, and given Class Counsel's close involvement in the prosecution of the litigation, Class Counsel's recommendation of settlement approval is entitled to significant weight. *See, e.g.*, *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) (counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

Fourth, there have been zero requests for exclusion from or objections to the Settlement. Schley Decl. at ¶ 41. This is particularly notable because Settlement Notices have been delivered

to all but two Class Members in this action. *Id.* at ¶ 40; *see Dominguez*, 2017 WL 2495406, at *2 (approving settlement where 135 of 614 individuals could not be located).

**B.    The *Girsh* Factors Weigh in Favor of Approval**

At the final approval stage, courts in the Third Circuit also consider the following factors, set forth in *Girsh v. Jepson*:

1) the complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the proposed settlement;
3) the stage of the proceedings, and amount of discovery completed;
4) risks of establishing liability;
5) risks of establishing damages;
6) risks of maintaining a class through trial;
7) the ability of defendant to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156–57 (3d Cir. 1975).  The *Girsh* factors weigh in support of approval of the Settlement in this case.

**1.    Complexity, Expense, and Duration of Litigation**

The Settlement avoids further litigation, additional discovery (especially depositions), motion practice, trial, and possible appeals, all of which entail significant expenses.  As of the date of this filing, the Action has been ongoing for over two years.  (*See* ECF No. 1, filing date of May 15, 2018).  The Parties have already incurred significant expenses litigating the Action.

If the Action continues, it will take substantially more time before class certification and dispositive motions are decided and trial begins.  By reaching a mutually acceptable settlement, the Parties have reduced their risks and avoided significant expense and delay.  *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012) (finding first *Girsh* factor in favor of settlement approval where approval was sought before dispositive motion practice).  The first *Girsh* factor therefore weighs in favor of approval.

11

## 2. Reaction of the Class to the Settlement

The Class Members' reaction to the Settlement strongly favors final approval. The Class Members plainly support the Settlement. While Settlement Notices have been successfully delivered to 60 of the 62 total Class Members, not a single Class Member has objected to or sought exclusion from the Settlement. Schley Decl. ¶¶ 40,41; *see In re Cedant Corp.*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of Settlement."); *In re Gen. Motors Corp.*, 55 F.3d at 812 ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)); *Hegab v. Family Dollar Stores, Inc.*, No. 11–1206 (CCC), 2015 WL 1021130, at *6 (D.N.J. Mar. 9, 2015) ("The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves the settlement."). Accordingly, the second *Girsh* factor weighs in favor of approval of the Parties' Settlement.

## 3. Stage of Proceedings and Amount of Discovery Completed

The parties must have an "adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp.*, 264 F.3d at 235. Here, the Parties exchanged and analyzed substantial document discovery and litigated various discovery issues prior to negotiating the proposed Settlement. Schley Decl. ¶¶ 6-20. This information is necessary to evaluate liability and damages and to determine whether class-wide litigation may be possible. In light of the discovery exchanged, the Parties were able to negotiate at arm's length with "a clear view of the strengths and weaknesses of their case." *See Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003). As such, the third *Girsh* factor weighs in favor of approval.

### 4. Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial

Continuing the Litigation would expose the Parties to significant litigation risks highlighted in the fourth, fifth, and sixth *Girsh* factors, all of which militate in favor of granting Settlement approval. *See, e.g.*, *Singleton*, 2014 WL 3865853, at *6 (listing risks of proceeding with class action involving wage-and-hour claims). Although the Parties believe they have strong claims or defenses, they recognize they also face significant litigation costs and delays should the litigation continue.

While Plaintiff believes that his claims are strong, there is a risk that a class may not be certified. Defendants have contended that certain Class Members should be excluded because they are bound by arbitration stipulations. Schley Decl. ¶ 13. If the litigation proceeds, there will be individualized inquiries about which employees are allegedly bound by arbitration stipulations and into the validity and enforceability of any arbitration stipulations that may have been signed. Accordingly, there is no guarantee that a class can be maintained through trial. In addition, as noted in previous filings, *see, e.g.*, ECF Nos. 54, 56, Defendants did not retain records necessary to precisely calculate damages and some of the records retained after the court's preservation order are not entirely legible. To avoid the risks inherent in continued litigation, as well as the uncertainty of collective and class action motion practice, the Parties agreed to the Settlement. Under these circumstances, the fourth, fifth, and sixth *Girsch* factors weigh heavily in favor of settlement approval.

### 5. Reasonableness of Recovery in Settlement

The reasonableness of the settlement fund in light of the potential recovery and the litigation risks discussed above, as well as Defendants' ability to withstand greater judgment (the seventh, eighth and ninth *Girsh* factors) weighs strongly in favor of approval.

Although Plaintiff's counsel has calculated Defendants' potential exposure, it is difficult in this case to determine the highest possible recovery because of the absence of complete records. As noted, Defendants did not retain time records before the Complaint was filed and did not do so after the filing, notwithstanding their duty to preserve evidence. After document demands and repeated unsuccessful efforts by Plaintiff to obtain the preservation of records, a motion was filed, ECF No. 54, which resulted in a preservation Order dated September 18, 2019, ECF No. 57. At that point, Defendants began to retain time records, portions of which were illegible. In addition to the absence of records during the liability period, obtaining information from putative Class Members has been difficult because they are all Spanish-speaking, and many are undocumented and understandably reluctant to come forward. In addition, Defendants have put forward an inability to pay defense, which they have supported with tax returns for 2017 and 2018. These are the unfortunate but common realities when representing low-wage workers employed at small and mid-sized businesses.

In consideration of the above, the Parties affirm that the Settlement Fund represents a fair value in light of the attendant risks of litigation and issues of proof, even though a greater recovery might be possible if Plaintiff was 100% successful in every phase of the litigation, including possible appeals. If Defendants prevailed in their defenses, the Class would not recover anything. If Defendants prevailed in decertifying the class, Loja would have to litigate his claims alone, in which case any potential recovery would be *de minimis* compared to the Settlement Fund.

It is well established that a settlement in a class action can be appropriate even where the settlement amount is only a percentage of the Class's highest potential recovery. *See Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 WL 2085282, at *16 (D.N.J. 2006) (approving $15 million settlement, though maximum exposure at trial could have been as high as $104 million,

because of the "magnitude of the risks in litigation"). Although the maximum potential recovery is difficult to ascertain in this case for the reasons discussed above, the Settlement Fund represents a fair and reasonable resolution of the parties' disputes under the circumstances here, particularly in light of the risk that Plaintiff may see little or no recovery at all if litigation were to continue. *See Varacallo*, 226 F.R.D. at 240 ("This Settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation—little or no recovery at all."). In view of the risks and disputes discussed above, the eighth and ninth *Girsch* factors weigh in favor of approval of the Parties' Settlement.

### C.    The Proposed Settlement Is Fair and Reasonable under the FLSA

Whether to approve the settlement of an FLSA collective action is within this Court's discretion. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("[W]e allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation."). In its analysis, the Court should be "mindful of the strong presumption in favor of settlement." *Morales v. PepsiCo, Inc.*, No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012) (citing *Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)).

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 WL 1344745, at *18 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The adversarial nature of a litigated FLSA case is typically an adequate guarantor of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A proposed settlement should be approved if it "represents a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Bredbenner*, 2011 WL 1344745, at *18 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The Parties dispute whether: (1) Defendants violated the FLSA and New Jersey laws by allegedly failing to pay Class Members minimum and overtime wages; (2) Defendants alleged violations of the FLSA and New Jersey laws were willful; and (3) Loja can maintain a collective action on behalf of all allegedly similarly situated Class Members in light of arbitration stipulations allegedly signed by certain Class Members. Assuming liability were established, the Parties further dispute the extent of damages owed to the Class Members. Thus, the proposed Settlement resolves bona fide disputes. *Bredbenner*, 2011 WL 1344745, at *18 (approving settlement where "'disagreements 'over hours worked or compensation due' clearly establish[d] a bona fide dispute" and the "institution of a federal court litigation" coupled with "aggressive prosecution and strenuous defense demonstrate[d] the palpable bona fides of this dispute").

As noted above, the Settlement Fund represents a fair resolution of the Parties' disputes in light of the risks of litigation discussed above, even though greater recovery could be obtained if Plaintiff was 100% successful in this Action through trial and appeals. Finally, public policy strongly favors settlements because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). The Settlement here is consistent with this policy, because it resolves a pending action on behalf of 62 employees and avoids a potential jury trial and appeals. Because the Settlement represents a fair resolution of bona fide disputes, public policy weighs heavily in favor of its approval. *Id.*; *see also Farris*, 176 F.3d at 711.

## III. The Court Should Approve Class Counsel's Requested Attorneys' Fees

Class Counsel requests fees equal to 33.33% of the Settlement Fund after deducting reimbursements for costs and expenses. Schley Decl. ¶ 47. Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the litigation purely on a contingency fee basis. If the litigation had resulted in no

recovery, Class Counsel would have recovered no fees and lost its costs incurred in the prosecution of the litigation. *See id.* (explaining that Class Counsel represented Plaintiff "purely on a contingency fee basis of 33.33% of whatever amount was recovered"). To date, Class Counsel has dedicated 175.7 hours of attorney time prosecuting this matter. *See id.* at ¶ 65.

Class Counsel's fees are requested as a percentage of settlement fund. This is the preferred method for courts in the Third Circuit in calculating attorneys' fees and costs in class actions. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *19 (noting "percentage-of-recovery method to award attorneys' fees in common fund cases" is the "prevailing methodology used by courts in this Circuit for wage-and-hour cases"); *Brown*, 2017 WL 2986300, at *5 (same, and stating it "is also more appropriate to use the percentage-of-recovery method where, as here, the settlement releases Defendant from both damages and attorneys' fees").

Each of the factors considered by courts in reviewing requested attorneys' fees weighs in favor of approval of Class Counsel's requested fees in this case. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (identifying factors used in the analysis of the reasonableness of proposed class counsel fees).[4]

The Settlement Fund was created to benefit 62 employees. Under the Settlement, each Class Member will receive compensation for unpaid overtime premiums at a rate of $37.36 per week worked during the Liability Period—the approximate equivalent of compensation for unpaid overtime premiums for eight hours of overtime work per workweek during the Liability Period.

---

[4] The factors identified in *Gunter* are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Id.* at 195, n.1.

The Settlement represents a significant recovery in light of the disputed issues including the question of arbitrability and the litigation risks discussed above. Moreover, while 60 of the 62 Class Members received the Settlement Notice—which explains that "Class Counsel will apply to receive one-third of the Settlement Payment (an amount equal to $56,122.00) for the services they provided," Ex. A at § 3—not a single Class Member has filed an objection to or request for exclusion from the Settlement to date. Schley Decl. at ¶ 40-41. Accordingly, the size of the fund created, number of persons benefitted, and absence of objections by Class Members weigh strongly in favor of approval of Class Counsel's requested fees. *See Hegab*, 2015 WL 1021130, at *12 ("The absence of objections by settlement class members to the fees requested by class counsel strongly supports approval."); *Dominguez*, 2017 WL 2495406, at *7 ("No class member has asserted any objection to the proposed fee award, and the Court consequently finds that this factor weighs in favor of approval.")

As discussed above, the Class Members are represented by competent and experienced counsel who are experienced in wage-and-hour collective and class actions and have dedicated significant time and resources to the litigation and resolution of this action. Class Counsel, Law Offices of Mitchell Schley, LLC, is a labor and employment law firm experienced in wage-and-hour practice. *Id.* ¶¶ 50-51. Pechman Law Group PLLC, is a New York City labor and employment law firm that has litigated hundreds of wage-and-hour cases on behalf of both employees and management. *Id.* ¶¶ 52-56. The skill and efficiency of Class Counsel is demonstrated by its successful negotiation of a substantial resolution in this case benefitting a large group of employees despite the defenses raised by opposing counsel. Accordingly, this factor weighs in favor of approval of Class Counsel's requested fees. *See Bredbenner*, 2011 WL 1344745, at *20 ("The skill and efficiency of class counsel is 'measured by the quality of the result

achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'") (citation omitted).

The complexity and duration of the litigation, risk of nonpayment, and time devoted by Class Counsel further support approval of Class Counsel's requested fees. As previously noted, to date this Action has been ongoing for over two years and has involved the litigation of various discovery disputes and the issue whether certain Class Members should be excluded from the class and collective action in light of alleged arbitration agreements. *See* Schley Decl. at ¶¶ 12-20. Moreover, Class Counsel incurred significant risks of nonpayment by litigating this Action purely on a contingency fee basis. If the litigation had resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred in the prosecution of the litigation. *See, e.g., Bredbenner*, 2011 WL 1344745, at *20 ("[C]lass counsel undertook substantial risk that the litigation would yield little or no recovery and leave them completely uncompensated for their time."). To date, Class Counsel has devoted over 170 hours to the prosecution of this litigation.

Further, Class Counsel's requested 33.33% award is consistent with awards that courts in the Third Circuit routinely approve. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *18 (awarding 32.6% of settlement fund, totaling $978,353.16, plus costs of $11,646.84, in wage and hour class action); *In re Gen. Motors Corp.*, 55 F.3d at 822; *Brown*, 2017 WL 2986300, at *6 ("[T]he Honorable Jose Linares has stated that '[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund' in common fund cases and then cited several cases in which awards in the range of one-third were awarded.") (quoting *Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ("Counsel's request for one-third of the settlement fund falls within the range of reasonable

allocations in the context of awards granted in other, similar cases.") (collecting cases)); *Cruz v. JMC Holdings, Ltd.*, No. 16–9321, 2019 WL 4745284, at *9 (D.N.J. Sept. 30, 2019) (approving request of 43% of fund as attorneys' fees as "within the range of reasonable allocations with respect to awards granted in similar cases"). The reduction of fee percentages by district courts primarily occurs in cases involving very large settlement funds significantly exceeding the settlement fund in this case. *See, e.g., In re Cedant Corp. Litig.*, 264 F.3d at 241–42; *Dominguez*, 2017 WL 2495406, at *8 n.5 ("[F]ee awards in cases with very large recoveries, *e.g.*, over $100 million, have been of lower percentages."); *C.f. In re Safety Components, Inc. Secs. Litig.*, 166 F. Supp. 2d 72, 101–02 (D.N.J. 2001) (listing various cases in which courts awarded 33.3% of large settlement funds). Here, the Settlement Fund is $170,000.00 and the one-third percentage requested is reasonable.

Finally, a lodestar cross-check confirms that the fee requested is reasonable. *See, e.g., Gunter*, 223 F.3d at 199 (noting that it is "advisable" that district courts "cross-check the percentage award counsel asks for against the lodestar method of awarding fees"). To cross-check the lodestar, the court may calculate the "lodestar multiplier," which equals the fee requested as a percentage of the fund divided by the lodestar. *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Bredbenner*, 2011 WL 1344745, at *21. Lodestar multipliers "ranging from one to four are frequently awarded in common fund cases." *In re Prudential*, 148 F.3d at 341; *Dominguez*, 2017 WL 2495406, at *8 ("Percentage of recovery fees have been approved when they represent up to four times what the lodestar recovery might represent.").

In this case, Class Counsel's lodestar is $71,637.50, equal to each professional's hourly billable rate multiplied by his or her total hours worked in the Litigation. Schley Decl. ¶ 65-67. The lodestar multiplier is 0.78 (*i.e.*, the $56,122.00 fee requested divided by the $71,637.50

lodestar). Accordingly, the lodestar cross-check further supports approval of Class Counsel's requested fees.

In sum, each of the relevant factors favors approval of Class Counsel's requested fee award of 33.33% of the Settlement Fund after expenses, or $56,122.00. Class Counsel therefore respectfully requests that the Court approve its requested attorneys' fees.

## IV.    The Court Should Approve Class Counsel's Requested Costs

The Court should approve Class Counsel's request for reimbursement of $1,616.00 in costs incurred in the prosecution of this Action. Schley Decl. ¶ 68. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l, Inc. Secs. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

Class Counsel incurred $1,616.00 (rounded down to the dollar) in costs—a $400.00 filing fee, $289.24 in process service costs, and $927.29 in transcript services. Schley Decl. ¶ 68. These expenses incurred are documented and explained in the Schley Declaration, *id.*; and Class Counsel respectfully requests that they be awarded by the Court.

## V.    The Court Should Approve the Class Representative's Requested Service Award

The Class Representative's service award is reasonable and should be approved. Service or incentive awards "are fairly common in class action lawsuits involving a common fund for distribution to the class." *Bredbenner*, 2011 WL 1344745, at *22. The purpose of incentive awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of the class action litigation,' and to 'reward the public service' for contributing to the enforcement of mandatory laws." *Id.* (internal citations omitted).

The service award requested here, $5,000.00, represents a tiny fraction (2.94%) of the Settlement Fund, and is well within the range of service awards regularly approved in class actions by courts in the Third Circuit. *See, e.g.*, *id.* at *23 (collecting cases in which class representatives were awarded between $3,000.00, on the low end, to $30,000.00, on the high end, as service awards).

Loja, the sole named Plaintiff, was directly involved in the Litigation since before its filing by providing all facts necessary for the drafting and revision of the Complaint, such as the work duties he and other Class Members performed and information regarding Defendants' alleged unlawful practices. After the Complaint was filed, Loja accepted the burden associated with being the only named Plaintiff by, for example, assisting Class Counsel in preparing for Neustadt's deposition. Loja has performed sufficient work and risk that was instrumental in obtaining the proposed Settlement, and should receive the requested service award. *See, e.g.*, *Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16–cv–6054, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (approving $10,000.00 service award to each plaintiff involved in commencing action and "willing to assume the risk associated with being a named plaintiff in a class action").

---

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter the proposed Final Approval Order, enclosed to the Notice of this Motion.

Dated:  July 27, 2020

LAW OFFICES OF MITCHELL SCHLEY, LLC

By:     *s/ Mitchell Schley*
   Mitchell Schley, Esq.
   197 Route 18, Suite 3000
   East Brunswick, NJ 08816
   Tel.:  (732) 325–0318
   mschley@schleylaw.com

PECHMAN LAW GROUP PLLC

By:     *s/ Louis Pechman*
   Louis Pechman, Esq.
   Vivianna Morales, Esq.
   488 Madison Avenue, 17th Floor
   New York, New York 10022
   Tel.:  (212) 583-9500
   pechman@pechmanlaw.com
   morales@pechmanlaw.com

*Attorneys for Plaintiff, the Putative Rule 23 Class,*
*and the Putative FLSA Collective*